IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KENNETH and LISA ELAM, Husband and Wife, STEVE and DIANA HAWKINS, Husband and Wife, IRA VAUGHN, and VICTORIA HAWKINS<br><br>Plaintiffs,<br><br>v.<br><br>HARPETH VALLEY UTILITIES DISTRICT OF DAVIDSON AND WILLIAMSON COUNTIES<br><br>Defendant. | Case No. _____<br><br>JURY DEMANDED |

## COMPLAINT

Comes now Kenneth and Lisa Elam, Steve and Diana Hawkins, Ira Vaughn, and Victoria Hawkins, herein "Plaintiffs," by and through counsel and allege the following:

### INTRODUCTION

1. This is a citizens' suit, brought under Section 505 of the Federal Water Pollution Control Act, otherwise known as the Clean Water Act (Act) as amended, 33 U.S.C. 1365. Plaintiffs seek a declaratory order, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witness' fees for the defendants' violations of the Act, 33 U.S.C. § 1365 (§401 state certification under the Act), §1344 (§404 permits for dredged and fill materials under the Act), §1365 (§505 citizen suits under the Act), related conditions, rules, and regulations in 33 CFR 330, and applicable state rules and regulations.

1

## JURISDICTION AND VENUE

2. This Court has exclusive subject matter jurisdiction under 33 U.S.C. §1365(a), and supplemental or pendant jurisdiction over the related nuisance and property damage claims asserted.

3. On June 7, 2011 the Plaintiffs gave notice of the violations and their intent to file suit. Notice was served on the Tennessee Department of Environment and Conservation (TDEC), the Administrator of the United States Environmental Protection Agency (EPA), the Region Four Director of the EPA, and the Defendants Harpeth Valley Utilities District of Davidson and Williamson Counties as required by the Act, 33 USC §1365(b)(1)(A).

4. More than 60 days have passed since notice was served and neither the EPA, nor TDEC, has commenced any action or are they diligently prosecuting a civil or criminal action to address the violations. In addition, neither the EPA, nor TDEC, has commenced an administrative civil penalty action under §1341(b) of the Act, or 33 USC §1344(s) to address the violations prior to the issuance of the June 7, 2011 notice letter.

5. Venue is appropriate in the Middle District of Tennessee pursuant to 33 USC §1365(c)(1), as the source of the violations is located within this district.

## PARTIES

### PLAINTIFFS

6. The Plaintiffs sue as individuals with recognizable legal interests that are directly and adversely affected by the actions of the Defendants causing a loss of water, flow and consequential loss of aquatic life in and near Overall Creek.

7. Kenneth and Lisa Elam own six acres through which Overall Creek runs, and have also suffered the loss of water, flow and loss of aquatic life as a consequence of the dredging and filling work by defendants in and near Overall Creek.

8. Steve and Diana Hawkins own two tracts of land comprising 36 acres affected by the actions of the Defendants as described herein and above. Overall Creek flows for approximately 2000 linear feet through their property.

9. Ira Vaughn and Victoria Hawkins have similar property interest to the other Plaintiffs with acreage served by the creek providing water for livestock and recreation, and have suffered a loss of water, flow and aquatic life in and near Overall Creek.

10. For each Plaintiff, the harm alleged is redressable by corrective action that will restore stream flow, aquatic life, and various uses of the water within plaintiffs' respective property lines.

## DEFENDANTS

11. Defendant HVUD is a public benefit corporation responsible for providing water and wastewater services to residents in Davidson, Williamson, and Cheatham Counties in Tennessee. In 2006 and 2007, under a §404 permit issued by the Army Corps of Engineers (Permit #20031747) and §401 state certification (NRS03.028) HVUD dredged and filled along side, in, and underneath the streambed of Overall Creek. HVUD crossed under Overall Creek fourteen times to install a gravity sewer line under its respective permits.

## FACTUAL BACKGROUND

12. HVUD obtained authority on or about December 2, 2003 to perform proposed utility line installation work at approximately Mile 3.4 of Overall Creek in Davidson

3

County under the Army Corps of Engineers (Corps) "§ 404" Nationwide Permit which became effective for general use on March 18, 2002. The proposed work was a dredge and fill project that would cut along, under and across Overall Creek to install a gravity sewer line. This installation included approximately fourteen crossings under the stream bed to install the pipe. The authorization signed by Richard D. Graham of the Corps Operations Division required that all work was subject to the conditions and plans attached to the permit, including the Nationwide Permit "12" and Conditions in File No. 200201747.

13. Paragraph four (4) of the Corps Nationwide Permit specifies that "No activity may substantially disrupt the necessary life-cycle movements of those species of aquatic life indigenous to the waterbody, including those species that normally migrate through the area, unless the activity's primary purpose is to impound water." Nationwide Permit No. 12 further specifies that the installed utility trench cannot be constructed in such a manner as to drain waters of the U.S. out of the creek/stream bed creating a 'french drain' effect. (Paragraph (i))

14. The Corps permit also specified that the work must be in accordance with the State General Permit conditions for utility line crossings.

15. The state permit issued to defendant for this work, NRS 03.028 was effective on June 26, 2003 for a period of five years, and specified that all work must be done in accordance with the plans and other specifications submitted with the application, and must comply with water quality criteria as stated in Rule 1200-4-3-.03 and 1200-4-4, and may not impair the usefulness of the stream for uses including fish, aquatic life, livestock watering, recreation, irrigation or wildlife.

16. Under the permits, HVUD made the fourteen stream crossings and installed a sewer main across the Plaintiffs' property in the summer and fall of 2007, several years after first obtaining the permits.

17. After the work was completed, Plaintiffs noticed reduced flow at Overall Creek which low flow also coincided with the severe drought of 2007 and into 2008. Also, a spring on property owned by Plaintiffs Steve and Diana Hawkins dried up after the work was done, a condition which also coincided with the drought. It could not be determined at that time whether the lack of flow was attributable to the work performed or the drought conditions.

18. On January 14, 2008, HVUD contracted with QORE Property Science to determine if the sewer line caused the Plaintiffs' spring to stop flowing. Following their initial investigation, HVUD and QORE Property Science assured plaintiff Steve Hawkins and others that the cause of the low flow was the drought and lack of rainfall, not the dredging and pipe work on the stream crossings.

19. In the summer of 2008, Plaintiffs were assured that Overall Creek and the spring would return to normal flow when regular rainfall returned.

20. However, throughout the summer of 2009, in contrast to its historical condition, Overall Creek's flow was almost entirely dependent on rainfall. In other words, depending on when one might inspect it, it may appear to be flowing normally if rainfall had just recently preceded the inspection.

21. In the summer of 2009, after repeated assurances by TDEC and HVUD, Plaintiffs determined that Overall Creek was not returning to historic flow, was in fact dramatically altered and the spring had not returned at all. Entire sections along the Plaintiffs'

5

Case 3:11-cv-01231   Document 1   Filed 12/28/11   Page 5 of 14 PageID #: 5

respective properties were extremely low in flow, had no flow at all or had dried up during times of the year when there had been consistent and substantial flow, dating back to the 1930's and earlier. Plaintiffs had patiently awaited the return of the water flow, following assurances from HVUD and some TDEC officials regarding the cause of the altered stream flow conditions. This flow did not return. The spring remained dry.

22. Plaintiffs learned in 2009 and thereafter that some TDEC officials believed the loss of flow to be in fact caused by the dredging and crossings under the creek as performed by HVUD under the permits, all of which are upstream of the Hawkins property. Plaintiffs also learned that during times of significant rainfall when there should have been adequate groundwater storage, the flow in the creek remained extremely low through the downstream areas of the Plaintiffs' properties, evidence of a significant interruption with groundwater flow, consistent with the 'draining' of the creek waters that is prohibited under the permits.

23. Plaintiff Steve Hawkins met with a TDEC official and biologist in 2009 who confirmed that the stream flow was in fact substantially altered over the properties downstream of the dredging and filing work for the pipe installation. The official confirmed to Mr. Hawkins that Overall Creek had a substantial loss of flow and that the pipe work along and under the creek bed was the likely cause of the diminished and lost flow. It is known to TDEC and utility companies that running pipes/utility lines along and under creek beds can cause the groundwater flow that should be in the stream bed to 'sink' or 'drain' stream water out of the streambed, and such work can cause the flow to be diverted to underground channels along the new, sub-surface pipeline.

24. Following various communications with TDEC, it became apparent to some plaintiffs, and Ms. Elam and Mr. Hawkins in particular, that officials at TDEC could not reach consensus about the cause of the problem and would not take corrective action.

25. Following such communications, Mr. Hawkins and Ms. Elam conducted further and independent investigation and concluded that despite the assurances of HVUD that the pipeline work had not diverted historic stream and spring flow in Overall Creek through the plaintiffs' properties, the evidence was substantial that HVUD's pipeline work, including fourteen underground crossings of the stream had caused a diversion or draining of the stream water, and caused consequential private property damage as well as violations of the permits, statutes and regulations as set forth herein.

26. Accordingly, Plaintiffs allege that HVUD's pipeline construction work under the permit in fact diverted, interrupted, drained or otherwise substantially diminished the stream flow in Overall Creek and causing it to dry up in large sections and render it useless for livestock, wildlife, fish, aquatic life and recreation across plaintiffs' properties for most months of the year. The pipeline work has also caused the apparently permanent loss/temporary loss of the spring on the Hawkins property.

## STATUTORY BACKGROUND

27. Pursuant to 33 USC §1344, (§404 FWPCA), the Secretary of the Army, acting through the Chief of Engineers has authority to issue permits for the discharge of dredged or fill material into navigable waters at specified disposal sites. Under this authority, the Secretary may issue general permits on a state or nationwide basis for any category of activities involving the discharges of dredged or fill material under certain conditions. (33 USC §1344(e)(1).

28. The Nationwide Permits issued by the Secretary under 33 USC §1344 are conditioned upon the federal regulations contained in the code of Federal Regulations, specifically 33 CFR 330 et. seq. Available Nationwide Permits include those pursuant to 33 CFR 330 Appendix A, "Utility Line Backfill and Bedding" known as a "#12" permit. Appendix B of that same regulation defines a "utility line" as any pipe or pipeline for the transportation of any gaseous, liquid, liquefiable, or slurry substance for any purpose.

29. Appendix C of 33 CFR 330.4 specifies that under the General Conditions for Nationwide Permits, no activity may substantially disrupt the movement of those species of aquatic life indigenous to the water body, or those that normally migrate through the area. This condition is a requirement for the authorization of a nationwide permit to be valid. Accordingly, if any work under the permit causes a loss of flow, or 'sinking' of a stream that substantially disrupts the movement of the aquatic life in the stream that lived in the water body before the permit work was conducted, the permit terms have been violated.

30. The terms of the federal permit and the state "ARAP" are effluent standards or limitations pursuant to subpart (f) of the federal Clean Water Act provisions for citizen suits. An effluent standard or limitation under 33 U.S.C. § 1365 (f) includes any applicable permit or condition of a permit. Accordingly, the ongoing loss and or draining and or diversion of the stream waters of Overall Creek due to the dredged and filled material in, under and next to the stream bed constitutes ongoing permit violations as long as the loss of water renders the stream substantially less useful for recreation, aquatic life, livestock, irrigation and recreation. Plaintiffs allege here that the facts are that the stream bed is dry in long stretches downstream from the multiple crossings, and

the loss of continuous, seasonal historic flow has made it unusable for livestock, irrigation, wildlife, recreation, and caused a loss of aquatic life.

31. The terms of the federal Nationwide Permits, the state 401 certification, and state "ARAP" NRS 03.028 have been and are continually violated as Overall Creek remains dry and diverted as a result of the dredge and fill work by HVUD. The matter has been brought to the attention of defendant, jurisdictional notice has been given. The loss of water in the stream and the loss of the spring feeding the stream has not been corrected. No state corrective action has been taken. The citizen suit is warranted.

## CAUSES OF ACTION

### I. Federal Clean Water Act

32. The foregoing paragraphs are incorporated here by reference as if fully set forth.

33. Plaintiffs allege that pursuant to 33 USC §1365 (Section 505 FWPCA), they are adversely affected citizens with standing to pursue this action and the jurisdictional notices have been served. Defendant's violations of the applicable standards and limitations are continuing.

34. Plaintiffs allege that this complaint has been made within the applicable statutory time of limitation.

35. Plaintiffs allege that Overall Creek described herein constitutes navigable waters within the meaning of 33 USC §1341 and §1344. Overall Creek is directly and hydrologically connected by continuous surface flow to the Cumberland River, and is a 'navigable' waterway within the meaning of the Clean Water Act. It is not an isolated wetland, or isolated stream segment.

36. Plaintiffs allege the Defendant violated the state and federal permit terms and limitations within the meaning of 33 USC § 1365, (f) §1341, §1344, and including, but not limited to 33 CFR 330 Appendices A and B, 330.4(c), the Tennessee state statutes T.C.A. §69-3-108(b) and Tennessee Water Quality Rules and Regulations, 1200-4-3-.03, and 1200-4-4, as well as 1200-4-2-.06, the Antidegradation policy of the state.

37. The permit terms, for the federal permit, "Nationwide Permit # 12" and the state permit, NRS 03.028 have been and continually violated as alleged above.

38. More specifically, Defendant installed the sewer line with approximately fourteen stream crossings as well as deep excavations along the creek bed that caused the bedrock of the streambed to be substantially destroyed and redirected surface and groundwater away from the creek bed surface and into subsurface areas. The pre-existing aquatic life cannot survive or migrate with the loss of surface flow, or in a dry bed, and the dry bed cannot be used for livestock, recreation or other such purposes.

39. Prior to the work in the stream, Overall Creek and the Hawkins' spring had provided nearly year-round and perennial flow for all irrigation, farming and livestock uses. The Hawkins family alone has relied on it for over a generation.

40. Additionally, the aquatic life, eco-system, and aesthetic qualities of Overall Creek enjoyed by these plaintiffs and used for recreational, agricultural and property value purposes are no longer observable and may have been destroyed.

41. Alternatively, Plaintiffs allege Defendant violated the standards and limitations within the meaning of 33 USC §1341, 33 CFR 330, Appendices A and B and 330.4(c) by failing, and continuing to fail to satisfy the terms and conditions of the nationwide permit

for Utility Line Backfill and Bedding, even after the matter was brought to its attention and the attention of TDEC.

42. Alternatively, Plaintiffs allege Defendant violated 33 USC §1365 by failing to obtain an appropriate permit for the installation of a utility line and destruction and/or alteration of a stream or the permanent diversion of stream flow thereby violating 33 USC §1344, (§404 of the FWPCA requires a permit for dredging and filling waters of the United States) and or §1341, (§401 of the FWPCA). Accordingly, the dredged and filled material was placed and remains in place substantially disrupting stream flow and aquatic life without the required permit for a permanent alteration to surface streams.

43. Defendant is subject to an injunction ordering it to cease all violations of the applicable standards and limitations and restore the stream to its original contours and restore the surface flow and aquatic life, and otherwise comply with the requirements of the applicable Nationwide Permit for Utility installation.

44. Defendant is subject to, and Plaintiffs make a reasonable demand for, an award of costs of litigation including reasonable attorney and expert witness fees pursuant to 33 USC §1365(d), and penalties as provided by statute. Penalties are applicable for every day during which the violations occurred and continue to occur, according to proof.

## II. Nuisance

45. Plaintiffs re-allege all of the foregoing paragraphs and incorporate them as if fully set forth in this cause of action.

46. Plaintiffs allege that by the actions set forth herein, Defendant has created and maintained a condition by the construction of the pipeline that has damaged Overall

Creek, and substantially and unreasonably harmed and otherwise interfered with the free use, possession and enjoyment of the private property of the plaintiffs and each of them over an unreasonable length of time. The acts of Defendant in 'sinking' or 'draining' the stream flow of Overall Creek and the Hawkins spring has created and maintained a nuisance.

47. The actions of the Defendant have caused the Plaintiffs to lose aesthetic value, a source of water for livestock and recreation, property value for agricultural land that long had a consistent and reliable water/stream source, with aquatic life in the stream. Each of plaintiffs' properties is uniquely situated to derive value from the location of Overall Creek as a water source. Each plaintiff has enjoyed the stream and used it for recreational activities with family and children. Lisa Elam owns and maintains horses and the loss of the stream has directly diminished her ability to enjoy the property and stream for that purpose, as one specific example. The Hawkins family has enjoyed the historic use of the stream and their spring as an alternative water source, and for irrigation, recreation, livestock and wildlife. The loss of it is distressing, annoying and a substantial interference with the property rights of each plaintiff. The actions of the Defendant have created an ongoing nuisance that shows no signs of abatement, despite repeated assurances that the pipeline work caused no change at all.

48. Plaintiffs allege the nuisance is temporary, permanent, and may be both as the law recognizes. The nuisance may be reparable with corrective action, which is preferred and requested. Plaintiffs demand damages for each of them for the loss of use, loss of reasonable rental value, and or diminution in value, and damages for the annoyance,

inconvenience, discomfort, harm and injury to the personal comfort, free use and possession and occupation of each plaintiffs' property rights.

### III. Property Damage

49. Plaintiffs re-allege all of the foregoing paragraphs and incorporate them as if fully set forth in this cause of action.

50. Defendants had a duty to exercise reasonable care during the excavation, line replacement, and backfilling so as not to damage downstream properties and cause a loss of springs or stream flow.

51. Defendant failed to exercise reasonable care in designing, excavating, backfilling, and replacing the line in and around Overall Creek, and by installing it at such depths and repeated proximity to the stream bed that substantial interference with the groundwater flow, stream flow and Hawkins' spring was inevitable.

52. As a result of Defendant's failures, the Plaintiffs' property has been permanently damaged. Plaintiffs have lost nearly all use of the creek as a source of water, recreation, and aesthetic beauty.

53. Plaintiffs demand property damages as allowed by law for repair and replacement of the stream flow and stream bed contours, and or diminution in property value, whichever is less.

### RELIEF REQUESTED

54. WHEREFORE, Plaintiffs respectfully request this Court to grant the following relief:

a. Declare the Defendant has violated, and is in violation of the Act, 33 USC §1341 and §1344 and related regulations;

b. Order the Defendant to remediate the work areas and or Overall Creek to restore stream flow and water for the indigenous aquatic life, and otherwise comply with the terms of the Nationwide Permit, federal law and state law;

c. Award damages upon proof of the nuisance and or property damage claims up to and including $150,000 for each plaintiff;

d. Award Plaintiffs their costs, including reasonable attorney and expert witness fees, as authorized by Section 505(d) of the act, 33 USC§1365(d); and

e. Award penalties for each day the violations have occurred and persisted;

f. Award other such relief, as this Court deems appropriate.

Respectfully submitted,

*Elizabeth L. Murphy*
Elizabeth L. Murphy
BPR # 020905
1102 17th Ave. S., Suite 401
Nashville, TN 37212
Phone: (615) 327-0404
FAX (615) 320-1344
*Counsel for Plaintiffs*